868 P.2d 954

**Ynez LOPEZ and Mary Lopez, husband and wife, Plaintiffs–Appellants,**

v.

**FARMERS INSURANCE COMPANY OF ARIZONA, Farmers Insurance Exchange, Inc., Defendants–Appellees.**

No. 1 CA–CV 89–455.

Court of Appeals of Arizona, Division 1, Department E.

June 22, 1993.

Reconsideration Denied Sept. 1, 1993.

Review Granted on Issue No. 1 and Denied on Other Issues March 1, 1994.

Thur, Dawson & O'Sullivan by Calvin C. Thur, Steven C. Dawson, Mark A. Stachon, Scottsdale, for plaintiffs-appellants.

Broening, Oberg & Woods by James R. Broening, Jan E. Cleator, Neal B. Thomas, Phoenix, for defendants-appellees.

## OPINION

GARBARINO, Judge.

Ynez and Mary Lopez appeal from the judgment and amended judgment entered against them and in favor of Farmers Insurance Company of Arizona (Farmers) and from the trial court's order denying their motion for a new trial and motion for judgment notwithstanding the verdict. Because we find that the trial court erred in refusing to excuse for cause jurors who were insured by Farmers, refusing to require that Farmers give race-neutral explanations for excusing minority jurors, and giving an improper jury instruction, we reverse and remand for a new trial.

## ISSUES ON APPEAL

The Lopezes raise the following issues on appeal:

(1) Whether the trial court erred in refusing to excuse for cause jurors who were Farmers' policyholders;

(2) Whether the trial court erred in finding that the principles announced in *Batson v. Kentucky* do not apply to civil trials;

(3) Whether the trial court erred by not permitting the jury to consider the issue of bad faith unless it first found Farmers had breached the express terms of the insurance contract;

(4) Whether the trial court erred in allowing Farmers to present the opinion testimony of a Farmers' claims manager when Farmers had failed to disclose in discovery that it intended to use his testimony;

(5) Whether the trial court erred in refusing to give jury instructions regarding Arizona Department of Insurance rules and regulations;

(6) Whether the trial court erred in giving certain limiting instructions because they commented on and misstated the evidence and confused and prejudiced the jury by changing the issue; and finally,

(7) Whether the trial court erred in denying their motion for directed verdict and motion for judgment notwithstanding the verdict on the issues of breach of contract and bad faith.

Because we find the trial court erred in its rulings as to the first three issues presented, we do not address the remaining issues raised and reverse the judgment of the trial court and remand for a new trial.

## FACTS

We view the facts in the light most favorable to sustaining the judgment. *McFarlin v. Hall*, 127 Ariz. 220, 224, 619 P.2d 729, 733 (1980). On January 18, 1986, Mrs. Lopez was involved in a car accident which damaged the Lopezes' 1981 Honda. The Lopezes were insured by Farmers under a standard automobile liability policy which included collision coverage and which obligated Farmers to pay for the lesser of the car's actual cash value or the amount necessary to repair or replace the car, less a deductible. The driver of the other vehicle involved in the accident was also insured by Farmers. The Lopezes notified their insurance agent about the accident and he suggested they obtain a repair estimate from a dealership.

Mr. Lopez first sought an estimate from Biddulph Oldsmobile–Honda (Biddulph), the dealership from which the Lopezes had purchased the car. Biddulph estimated it would cost $3,108.24 to repair the car. As directed by Farmers, Mr. Lopez then took the car to a Farmers' drive-in claims office for an estimate. Manny Lugo, the Farmers' claims adjuster who wrote the estimate, handled the Lopezes' claim as a third-party claim. Mr. Lugo estimated the car repair would cost $2,032.25 and gave Mr. Lopez a draft for that amount. The draft contained release lan-

guage indicating that endorsement would constitute a release or covenant not to sue Farmers unless the draft was a payment of, among other things, a collision loss, in which case the draft would constitute a release only. Mr. Lopez told Mr. Lugo that Biddulph had given him an estimate that was substantially higher than Farmers' estimate and asked Mr. Lugo how he was going to get the car repaired for the amount Farmers was offering. Mr. Lugo responded that the Lopezes could have their car repaired for the estimated amount.

The Lopezes obtained another estimate from Villa's Body Shop for $2,827.95. When Mr. Lopez called Farmers to advise them he could not find a repair shop that would do the work for the amount of Farmers' estimate, Farmers suggested Mr. Lopez take the car to Sanderson Ford. Sanderson Ford gave the Lopezes an "open" estimate for $2,842.64. When Mr. Lopez told Farmers of the Sanderson estimate, Farmers again stated that its estimate was fair and that the car could be repaired for that amount.

The Lopezes contacted their agent and told him what was happening. After the agent contacted Farmers, Farmers sent adjuster Carl Carroll to Biddulph to reinspect the Lopezes' car. Mr. Carroll reinspected the Honda and gave an "agreed price," a price within which Biddulph, a Farmers "cooperative" shop, agreed to make the repairs subject to certain conditions or possible changes in the estimate. Mr. Carroll and Bud Emmett, the Biddulph estimator, estimated that $2,288.77 was sufficient to make the necessary repairs to the car. When the Lopezes received a Farmers' draft for that amount in the mail, it contained the same release language as the first draft. The Lopezes went to Biddulph to find out why their second estimate was so much lower than their earlier estimate. Mr. Lopez testified at trial that Biddulph had told him that they were going to piece the car together and fix it as cheaply as possible.

The Lopezes sent back the second draft issued by Farmers with a letter that stated they wanted their claim to be handled under their own collision coverage. William Hilding, a Farmers' claims manager, answered their letter. He returned the draft to them and told them that if they were not satisfied with the amount, they could demand an appraisal. The Lopezes refused to cash the draft.

The Lopezes sued Farmers, alleging breach of contract and breach of the implied covenant of good faith and fair dealing. The jury returned a verdict for Farmers and the trial court awarded Farmers costs and attorneys' fees. The Lopezes filed a motion for a new trial and a motion for judgment notwithstanding the verdict. Both motions were denied. The Lopezes filed a timely notice of appeal.

## DISCUSSION

A. *Farmers' policyholders should have been excused from the jury for cause because the Lopezes made a satisfactory showing that they had a monetary interest in the outcome of the case.*

The Lopezes first argue that they were deprived of a fair trial because the court refused to excuse for cause all prospective jurors who were Farmers' policyholders. At a pretrial conference, the Lopezes requested that the court excuse for cause any prospective juror who was a Farmers' policyholder. They argued that Farmers' insureds would be financially affected by the outcome of the case because they would be told that the premiums charged for automobile insurance could be affected by their verdict. When the court asked Farmers if such evidence would be brought up, Farmers indicated the jury would be told that one consideration in the rate-making process is the cost of claims. The court refused to strike the Farmers' insureds from the jury, stating that it would question each juror individually to determine his or her ability to be fair and impartial. During jury selection, the Lopezes reasserted their argument, stating that Farmers would also introduce evidence that their practice of using "after market parts," instead of original equipment manufacturer parts, results in lower premiums to their insureds. Farmers objected to a blanket striking of Farmers' insureds. The court did not strike the jurors. After the parties exer-

cised their five peremptory strikes, four of the remaining eight jurors were. Farmers' insureds. During opening statements, Farmers discussed its use of after market parts to lower claims costs, a factor used in determining insurance premiums. The Lopezes objected and later moved for a mistrial which the court denied. The Lopezes again moved for a mistrial, which was denied, after Mr. Hilding testified about the use of after market parts.

On appeal, the Lopezes claim that the trial court abused its discretion by failing to exclude for cause jurors who were insured by Farmers. The Lopezes contend that the jurors had a financial interest in the outcome of the case which was brought to the jurors' attention and emphasized during the opening remarks and closing arguments and through the testimony of Mr. Hilding. We agree.

■ Removing a juror for cause is within the trial court's discretion, and this court will not reverse absent an abuse of discretion. *Wasko v. Frankel,* 116 Ariz. 288, 290, 569 P.2d 230, 232 (1977). Arizona Revised Statutes Annotated (A.R.S.) section 21–211 (1990) provides as follows:

The following persons shall be disqualified to serve as jurors in any particular action:

. . . .

2. Persons interested directly or indirectly in the matter under investigation.

Jurors who are insured by an insurance company that is a party in the case have a direct financial interest in the outcome of the case if they know or have reason to believe their rates may increase or decrease depending on the outcome of the case. The jurors in question knew that the insurance company involved in the litigation was *their* insurance company. The insurance premiums affected by Farmers' use of "after market parts" were their premiums.

Farmers argues that the law cannot recognize this infinitesimal relationship. Farmers likens the relationship to a customer of Safeway being disqualified because a verdict may affect food prices or a taxpayer being disqualified because his or her taxes may increase. We do not believe the facts of this case to be so attenuated. When viewed in the light of the evidence to be presented, the relationship between Farmers and the jurors warrants disqualification for cause. However, we do agree that the facts of each case must be analyzed on an individual basis. Regardless of their professed ability to be fair, they know their verdict could mean money out of their pockets. Only naivete would lead us to believe that jurors are not astute enough to factor a rate increase into their decision. Money can be a compelling force in the decision-making process. Fairness alone dictates that those with a direct interest in the outcome should be excluded from the jury.

■ This is a matter of first impression in Arizona. We find no support from the few jurisdictions that have considered this issue. *See Oglesby v. Conger,* 507 P.2d 883, 885 (Colo.App.1972); *State Farm Fire and Casualty Co. v. Hornback,* 217 Kan. 17, 535 P.2d 441, 443–44 (1975); *Kendall v. Prudential Ins. Co.,* 327 S.W.2d 174, 178 (Mo.1959); *Barb v. Farmers Ins. Exch.,* 281 S.W.2d 297, 301 (Mo.1955); *Amos v. Altenthal,* 645 S.W.2d 220, 223 (Mo.App.1983). The trial court applied the case law as it exists in other states. We find that this approach is unrealistic in selecting objective, unbiased, and unprejudiced jurors in today's world. Our concerns are directed towards the juror insured by a party insurance company who perceives that the practices and policies of that insurance company will have an impact on his or her personal insurance rates. In the instant case, in view of evidence to be presented, we find the Lopezes only had to show that the jurors were insured by the defendant Farmers and that the resultant verdict could affect the amount of their future insurance premiums to necessitate their being excused from jury service for cause. The trial court, therefore, abused its discretion in failing to excuse for cause those jurors who were Farmers' insureds.

In their motion for a new trial and on appeal, the Lopezes argued that because Farmers is a mutual insurance company, its insureds would have an even greater interest in the outcome of a case in which Farmers was a party. Although the Lopezes raised

this issue too late, we do not believe this distinction merits further consideration. Where the evidence will reflect that the amount of premiums to be paid may be dependent on the amount of claims paid, every insured has a direct financial interest in a case in which his or her insurer is a party.

**B.** *Race-based exclusion violates the equal protection rights of civil jurors.*

█ The Lopezes next argue that they were denied a fair trial because the trial court permitted Farmers to strike the only minority members from the panel without requiring a race-neutral explanation. Following voir dire, counsel for both parties made their peremptory strikes. Before the permanent jurors were seated on the jury, plaintiffs' counsel voiced an objection to defendants' counsel having exercised two of his peremptory strikes against the only. two minority members on the panel. He argued that the equal protection principles announced in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), extended to civil litigants. The trial judge indicated that he did not believe the principles set out in *Batson* applied to civil cases and defense counsel agreed. The judge then requested the clerk to call the names of those individuals selected to serve as jurors in the case which in effect was a denial of plaintiffs' motion.

We find that the trial court erred in its determination that *Batson* did not apply to civil cases and point simply to *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), a case which we recognize was decided after the instant appeal was filed.

**C.** *A finding of breach of contract is not a necessary prerequisite to an action for bad faith.*

█ The Lopezes next assert that the trial court erred in instructing the jury to reach the bad faith claim only if it found Farmers had breached its insurance contract with the Lopezes. Based on our supreme court's recent decision in *Deese v. State Farm Mut. Auto. Ins. Co.,* 172 Ariz. 504, 838 P.2d 1265 (1992), which was not available at the time of trial, we find that it was error to so instruct the jury. As the court stated in *Deese:*

> We hold that plaintiff may simultaneously bring an action both for breach of contract and for bad faith, and need not prevail on the contract claim in order to prevail on the bad faith claim, provided plaintiff proves a breach of the implied covenant of good faith and fair dealing.

*Id.* at 509, 838 P.2d at 1270.

On remand, the trial court is instructed to modify its instructions regarding the bad faith claim to cure this error.

We decline to rule on the remaining issues as they may or may not arise on retrial.

Accordingly, we reverse and remand this case for a new trial.

CLABORNE, P.J., and MYERS, J., concur.

*NOTE:* The Honorable ROBERT D. MYERS was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to the Arizona Constitution, article VI, section 3.