IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

DEC 17 2010

COURT OF APPEALS
DIVISION TWO

THE STATE OF ARIZONA,           )
                                )      2 CA-CR 2008-0377
                Appellee,       )      DEPARTMENT B
                                )
        v.                      )      O P I N I O N
                                )
DOUGLAS LEE EDDINGTON,          )
                                )
                Appellant.      )
                                )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20061586

Honorable Kenneth Lee, Judge

AFFIRMED

---

Terry Goddard, Arizona Attorney General
  By Kent E. Cattani and David A. Sullivan                          Tucson
                                                        Attorneys for Appellee

Robert J. Hirsh, Pima County Public Defender
  By Rebecca A. McLean                                              Tucson
                                                       Attorneys for Appellant

---

E C K E R S T R O M, Judge.

¶1        Following a jury trial, appellant Douglas Eddington was convicted of second-degree murder and sentenced to sixteen years' imprisonment. On appeal, he argues the trial court's refusal to strike a potential juror for cause requires reversal. He also contends his conviction should be reversed or reduced because the jury received defective instructions regarding second-degree murder and the consideration of lesser offenses. We conclude the court erred in refusing to strike the challenged juror for cause given that he was a peace officer employed by the same office that had investigated the case. Finding no prejudice, however, we affirm.

## Background[1]

¶2        After an investigation by the Pima County Sheriff's Department, Eddington and two codefendants were charged with first-degree murder. During voir dire on the first day of trial, a venireman testified he was a Pima County sheriff's deputy and knew between one-third and one-half of the state's fourteen potential witnesses from the sheriff's department, including the lead detective, Christopher Hogan. The deputy further stated he currently was assigned to provide security at the Pima County Superior Court. He also stated without elaboration that he understood why there were two security

---

[1]Given our disposition and the procedural nature of Eddington's arguments, we need not recite the underlying facts of the case. *Cf. State v. Garcia*, 220 Ariz. 49, ¶ 2, 202 P.3d 514, 515 (App. 2008).

officers in the courtroom, a comment which suggested he knew Eddington was being held in custody.[2]

¶3　　　　Based on these facts, Eddington moved the trial court to strike the deputy for cause. The court denied the motion, referring to the deputy's repeated avowals that he could be a fair and impartial juror and would not treat the testimony of law enforcement officers differently from that of any other witness. "[G]iven the record . . . we have in terms of the questions and the responses," the court concluded, "there's not sufficient basis to strike him for cause." Eddington subsequently removed the deputy from the panel by use of a peremptory strike. Eddington was ultimately acquitted of first-degree murder but convicted of second-degree murder and sentenced as noted above. This appeal followed.

**Motion to Strike**

¶4　　　　Eddington contends his conviction should be reversed because the trial court erred in denying his motion to strike the deputy for cause. Eddington specifically urged the court to strike the deputy from the venire panel because the deputy "work[ed]

---

[2]Eddington misreads the record in claiming the deputy had himself transported the two codefendants.

3

for the same agency" as "all the law enforcement witnesses,"[3] because he "kn[ew] a third of the witnesses," and because the deputy was aware Eddington was in custody.[4]

¶5        As a general matter, a trial court must dismiss a juror for cause when "there is [a] reasonable ground to believe that [the] juror cannot render a fair and impartial verdict." Ariz. R. Crim. P. 18.4(b). The party challenging the juror bears the burden of establishing that the juror could not be unbiased and fair. *State v. Trostle*, 191 Ariz. 4, 13, 951 P.2d 869, 878 (1997). "In assessing a potential juror's fairness and impartiality, the trial court has the best opportunity to observe prospective jurors and thereby judge the credibility of each." *State v. Hoskins*, 199 Ariz. 127, ¶ 37, 14 P.3d 997, 1009 (2000). We therefore review a trial court's assessment of that question only for a clear abuse of discretion. *Id.*

¶6        Under the above standards, a peace officer is not automatically barred from serving as a juror. *See State v. Hill*, 174 Ariz. 313, 319, 321, 848 P.2d 1375, 1381, 1383 (1993) (finding no abuse of discretion in court's refusal to strike police officer for cause); *see also* A.R.S. § 21-202(B)(5) (giving peace officers option to be excused from jury service). Although "the impartiality of a potential juror who is personally acquainted with individuals involved in the prosecution is necessarily suspect," such acquaintances

---

[3]The record reveals that two law enforcement witnesses did not work for the same agency as the deputy.

[4]In his opening brief, Eddington does not squarely argue each of these three bases as grounds for relief but rather focuses on the deputy's knowledge of Eddington's in-custody status as a basis for his appeal. Because we do not grant Eddington relief at any rate, we exercise our discretion to comprehensively address the issue as to all aspects of the claim raised to the trial court.

alone are not grounds for automatic disqualification. *Hill*, 174 Ariz. at 319, 848 P.2d at 1381.

**¶7** However, any individual is disqualified by law from sitting on a jury if he or she is "interested directly or indirectly in the matter under investigation." A.R.S. § 21-211(2). We review the applicability of a statutory provision de novo and are not bound by the trial court's conclusions of law. *See Reeder v. Johnson*, 225 Ariz. 312, ¶ 6, 238 P.3d 123, 125 (App. 2010) (appellate court not bound by trial court's legal conclusions or conclusions on mixed questions of law and fact); *State v. Gonzalez*, 216 Ariz. 11, ¶ 2, 162 P.3d 650, 651 (App. 2007) (questions of statutory application reviewed de novo); *see also Lopez v. Farmers Ins. Co. of Ariz.*, 177 Ariz. 371, 373-75, 868 P.2d 954, 956-58 (App. 1993) (concluding venirepersons insured by insurer which was a party to the case had interest in case necessitating disqualification under § 21-211(2) notwithstanding trial court's finding they could be "fair and impartial").

**¶8** We hold that when a peace officer[5] is currently employed by the same agency, office, or department that conducted the investigation in a criminal case, that officer has, at minimum, an indirect interest in the case and must therefore be stricken for cause from a venire panel under § 21-211(2).[6] In any criminal prosecution, law

---

[5]We use the term "peace officer" as it is defined in A.R.S. §§ 1-215(28) and 13-105(28). Both definitions apply to the venireperson here.

[6]We are not here presented with a case wherein a particular law enforcement agency has only minor or token involvement in an investigation, and we do not address

5

enforcement officers and prosecutors work together as agents of the state. *See State v. Lane*, 69 Ariz. 236, 243-44, 211 P.2d 821, 826 (1949) ("Whatever investigation the sheriff made as an agent of the state was made for the benefit of the county attorney as an agent of the state in enabling him to successfully prosecute the offender . . . ."); *State ex rel. Romley v. Superior Court*, 172 Ariz. 232, 239, 836 P.2d 445, 452 (App. 1992) (identifying law enforcement officers as "agent[s] of the state"). Indeed, as our rules of procedure reflect, police investigators often literally serve beside prosecutors in the courtroom in attempting to prove the state's case. Ariz. R. Crim. P. 9.3(d) (allowing prosecutor "presence of one investigator at counsel table"); *e.g.*, *State v. Jones*, 185 Ariz. 471, 483, 917 P.2d 200, 212 (1996) (detective was Rule 9.3(d) investigator seated at counsel table); *State v. Williams*, 183 Ariz. 368, 379, 904 P.2d 437, 448 (1995) (two investigating detectives from different police agencies seated at counsel table).

¶9 Although prosecutors and peace officers alike have a broad interest in attaining justice in every case, *see State v. Hughes*, 193 Ariz. 72, ¶ 33, 969 P.2d 1184, 1192 (1998), peace officers, like prosecutors, also have a particular interest in seeing that the criminal cases their offices have investigated and developed are successfully prosecuted. Our jurisprudence recognizes that law enforcement can often become a "'competitive enterprise,'" just like any other human endeavor. *State v. Watling*, 104 Ariz. 354, 358, 453 P.2d 500, 504 (1969), *quoting Giordenello v. United States*, 357 U.S.

---

whether employees of an agency with such minimal involvement would have an indirect interest in the proceedings.

480, 486 (1958). If nothing else, a prosecution that results in a conviction closes a case and thereby conserves a police department's limited resources. Officers therefore have some interest in any investigation in which their own department has an institutional interest. And, in such event, they should be removed from a jury for cause, just as a deputy county attorney who works in the same office as the prosecutor should be removed from a jury panel. *See People v. Terry*, 35 Cal. Rptr. 2d 729, 732 (Ct. App. 1994).

¶10        Peace officers also have some interest in matters investigated by their own departments arising from their role as an employee of the organization that has a stake in the outcome of the case. The same considerations noted in *Terry* regarding prosecutors serving as jurors apply equally to peace officers called to judge their colleagues' work and credibility: When a case has been investigated and referred for prosecution by one's own employer, a peace officer serving as a juror might feel reluctant to join an adverse verdict because the case has been "brought by a fellow [investigator] from his own office" and presumptively "supervised by his own superior." 35 Cal. Rptr. 2d at 731; *see also Tate v. People*, 247 P.2d 665, 670-71 (Colo. 1952) (noting special deputy sheriff "would be presumed to be under ordinary allegiance to his superior, the sheriff," a material witness in case).[7]

---

[7]The state cites several cases addressing whether law enforcement officers have a sufficient interest in their investigations to meaningfully diminish the probative value of their in-court testimony. *See State v. Miller*, 187 Ariz. 254, 258, 928 P.2d 678, 682 (App. 1996); *State v. Nevarez*, 178 Ariz. 525, 527, 875 P.2d 184, 186 (App. 1993). Those cases

¶11    By the above standards, the deputy's interests in these proceedings were especially pronounced.  He had a professional relationship with more of the state's witnesses than he could precisely count—including the lead homicide detective, who both testified as a state's witness and sat at the prosecutor's table during portions of the trial.  If seated as a juror, the deputy would necessarily be forced to judge the credibility and conduct of his coworkers, a role with potential consequences for his future working relationships.  Disqualifying people with such professional entanglements and presumed allegiances was one of the clear purposes behind § 21-211(2).  *See* § 21-211(3) (disqualifying certain "[p]ersons related by consanguinity or affinity" to parties); *see also Commonwealth v. Fletcher*, 369 A.2d 307, 308-09 (Pa. Super. Ct. 1976) (concluding police detective should have been dismissed for cause given totality of circumstances, including fact that detective knew several police witnesses and worked for same department); *cf. State v. Davis*, 137 Ariz. 551, 555, 559-60, 672 P.2d 480, 484, 488-89 (App. 1983) (upholding refusal to strike civilian police assistant for cause, emphasizing "he was not acquainted with the police officers in this case").

¶12    By broadly excluding people "interested directly or indirectly in the matter under investigation," § 21-211(2) removes from the jury venire those whose financial or

_____

are readily distinguishable insofar as they did not interpret the meaning of a "direct[] or indirect[]" interest under § 21-211(2), nor did they purport to address an officer's potential interests in the context of jury eligibility.

8

professional self-interest may compete with the interests of justice.[8]   Contrary to the suggestion of our concurring colleague, § 21-211(2) does not give a trial court discretion to consider whether a venireperson with a direct or indirect interest may nonetheless serve fairly and impartially.   Rather, it states that such a person "shall be disqualified."[9] Thus, although we do not question the sincerity of the deputy's avowals of impartiality or the trial court's implicit trust in those avowals, such avowals do not render a venireperson with a direct or indirect interest in the matter eligible to sit on the jury.   We likewise accept, and defer to, the trial court's express and implicit findings on the nature of the deputy's relationships to the witnesses and investigating agency.   But, for the reasons stated above, we cannot agree with, nor need we defer to, the trial court's legal conclusion that the deputy had no interest, direct or indirect, in the outcome of a case investigated by his office.  *See Lopez*, 177 Ariz. at 373-75, 868 P.2d at 956-58 (reversing trial court and concluding insurance policyholders had direct interest in case and were therefore disqualified under § 21-211(2) when verdict could affect their premiums).

---

[8]The comment to Rule 18.4(b) similarly provides that a challenge for cause may be based on a "showing of facts from which an ordinary person would i[nfer] a likelihood of predisposition in favor of one of the parties," including the fact that a potential juror "stands in the relationship of . . . master and servant . . . or is an employee . . . of the person . . . on whose complaint the prosecution was instituted."   Although the rule does not expressly state the consequence of such an employment relationship, it will automatically disqualify a juror under § 21-211(2).

[9]In requiring disqualification notwithstanding a venireperson's avowals of impartiality, § 21-211(2) is similar to the criteria for judicial disqualification set forth in our own Code of Judicial Conduct.  *See* Rule 2.11(A), Arizona Code of Judicial Conduct, Ariz. R. Sup. Ct. 81 ("A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned . . . .").   Both provisions are aimed at instilling confidence in the justice system.

**¶13** Our concurring colleague maintains that A.R.S. § 21-202(B)(5) expresses a legislative intent at odds with disqualifying a peace officer pursuant to § 21-211(2). But § 21-202(B)(5) merely provides peace officers the right to be excused from jury service at their discretion upon application. No language in that provision suggests that any class of citizens is exempt from the requirements for jury service set forth in § 21-211, including peace officers who choose to serve. And although we agree that § 21-202(B)(5) contemplates that peace officers are generally eligible for jury service, nothing in our analysis limits peace officers' rights to participate in jury service in all cases, civil or criminal, wherein their employer has no direct or indirect interest.

**¶14** The concurring opinion also suggests that we have announced a new rule not contemplated by either our legislature or our supreme court. But the legislature, not this court, enacted § 21-211(2), which renders any person ineligible for jury service who has a direct or indirect interest in the case in question. And, assuming arguendo our supreme court has the constitutional authority to override legislation directed at the trial process, nothing in our supreme court's own rule relating to juror challenges, or the historical modifications to that rule, suggests any intention to modify or supplant § 21-211(2). *See* Ariz. R. Crim. P. 18.4; *see also Seisinger v. Siebel*, 220 Ariz. 85, ¶ 8, 203 P.3d 483, 487 (2009) (supreme court recognizes "statutory enactments that supplement rather than conflict with rules" promulgated by judicial branch).

**¶15** For all the above reasons, we conclude a peace officer has, at a minimum, an indirect interest in the outcome of a criminal investigation conducted by his employer.

The trial court therefore erred when it denied Eddington's motion to strike the deputy from the venire panel.[10]

¶16        In evaluating the deputy's fitness to serve as a juror here, we are also concerned by the deputy's awareness of Eddington's in-custody status. Contrary to the prosecutor's suggestion below, this was neither common knowledge nor a trivial fact. Indeed, criminal defendants have a constitutional right to appear in non-jail attire precisely to avoid reminding the jury of a defendant's in-custody status—knowledge that would create an "unacceptable risk" that the presumption of innocence will be eroded. *Estelle v. Williams*, 425 U.S. 501, 504-05 (1976). If forcing a criminal defendant to appear before a jury in jail attire erodes the presumption of innocence sufficiently to violate the defendant's right to due process, we are skeptical that a trial court retains the discretion to empanel jurors who are aware of a defendant's in-custody status, especially given the ease with which a venireperson may be replaced at that early stage in the proceedings. *Cf. State v. Murray*, 184 Ariz. 9, 35, 906 P.2d 542, 568 (1995) (finding motion for mistrial based on witnesses' testimony exposing defendant's custodial status properly denied when information "not prejudicial" in context of case).

¶17        The trial court's reasoning in rejecting the motion to strike suggests the court may have believed it lacked the discretion to strike the deputy once he sincerely

---

[10]We do not address whether the same rationale would render all employees of the investigating agency, including clerical and other support staff not involved in criminal investigation, ineligible for jury service in those cases investigated by that agency. We instead limit our reasoning to the issue presented on the record before us.

11

avowed his impartiality. Indeed, a potential juror's inability to "render a fair and impartial verdict" is the only criterion articulated under Rule 18.4(b) for excusing a juror for cause. But we emphasize that our courts retain broad discretion under that rule to determine "[w]hen there is [a] reasonable ground to believe" that a venireperson could not be fair and impartial notwithstanding the venireperson's own sincere belief to the contrary. *See State v. Glassel*, 211 Ariz. 33, ¶ 50, 116 P.3d 1193, 1208 (2005) (assuming juror sincere about being able to apply law, trial court "could have reasonably determined that the juror's views would substantially impair his ability to deliberate impartially"). Thus, even if our legislature had not provided additional eligibility requirements for jury service in § 21-211(2) pertinent to this case, the trial court was not obligated under Rule 18.4(b) to retain the deputy on the venire panel merely because he had testified sincerely that he believed he could be fair and impartial.

¶18 Although we find Eddington's motion to strike should have been granted, the trial court's ruling is nevertheless subject to harmless error review. *See State v. Garza*, 216 Ariz. 56, ¶ 32, 163 P.3d 1006, 1015 (2007); *State v. Hickman*, 205 Ariz. 192, ¶ 28, 68 P.3d 418, 424 (2003). "Reversal is not required if a fair and impartial jury was ultimately empanelled." *Garza*, 216 Ariz. 56, ¶ 32, 163 P.3d at 1015; *accord State v. Kuhs*, 223 Ariz. 376, ¶ 27, 224 P.3d 192, 198 (2010). The state argues the error was harmless because Eddington was ultimately tried by a fair and impartial jury. We agree.

¶19 Eddington contends he was prejudiced because his use of a peremptory strike on the deputy prevented him from striking a juror who worked as an engineer for

12

Raytheon and had rendered a guilty verdict in another case. Although these details may have made this juror less appealing to Eddington, they in no way suggested the juror was biased or could not serve as a fair and impartial trier of fact. *Cf. State v. MacDonald*, 110 Ariz. 152, 153-54, 515 P.2d 1172, 1173-74 (1973) (finding no prejudice when defendant merely argued "peremptory challenges are very valuable" and was prevented from "exercising his peremptory challenges to his best advantage"). "[W]hen a defendant secures an impartial jury, even through the curative use of a peremptory challenge, a conviction by that jury will not have prejudiced that defendant." *Hickman*, 205 Ariz. 192, ¶ 31, 68 P.3d at 425. Because Eddington has not articulated beyond mere speculation how the trial court's error affected the outcome of the case, we find the error harmless.

¶20 We recognize that in order to preserve an appellate claim that a trial court erred in failing to strike a venireperson for cause, a defendant must use a peremptory strike to remove that person from the panel. *State v. Rubio*, 219 Ariz. 177, ¶ 12, 195 P.3d 214, 218 (App. 2008). Thus, under all but the most extraordinary circumstances, defendants will be unable, as here, to show prejudice and secure any relief arising from a trial court's erroneous failure to strike a venireperson for cause. *See Hickman*, 205 Ariz. 192, ¶ 31, 68 P.3d at 425 (acknowledging near impossibility of determining effect on trial when defendant uses peremptory strike to remove juror challenged for cause). For this reason, an appellate challenge to a trial court's failure to strike a potential juror for cause would, in most criminal cases, evade review if we routinely declined to reach such claims

13

in every case wherein we found no prejudice from the error. We think the better practice is to address such claims on their merits when, as here, we can provide our trial courts important guidance in so doing.

## Jury Instructions

**¶21**        Eddington contends he is entitled to appellate relief because the trial court gave three erroneous jury instructions, all of which he failed to challenge below. Because he did not properly allege these errors in the trial court when they could have been corrected, *see* Ariz. R. Crim. P. 21.3(c), Eddington has forfeited appellate review for all but fundamental error. *See State v. Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d 601, 607-08 (2005). Under this more restrictive standard, a defendant bears the burden of establishing that error occurred, that the error was fundamental, and that it resulted in prejudice. *Id.* ¶ 20.

**¶22**        A principal reason for applying the fundamental error standard of review is to discourage defendants from attempting to use a curable error as a "'hole card'" on appeal in the event they are dissatisfied with the results of their trial. *Id.* ¶ 19, *quoting State v. Valdez*, 160 Ariz. 9, 13, 770 P.2d 313, 317 (1989), *overruled on other grounds by Krone v. Hotham*, 181 Ariz. 364, 890 P.2d 1149 (1995). So, although Eddington is correct that erroneous jury instructions may often be characterized as fundamental error, *e.g.*, *State v. Schad*, 142 Ariz. 619, 621, 691 P.2d 710, 712 (1984), it is also the case that defendants will seldom obtain appellate relief on the basis of defective instructions to

14

which they raised no objection in the trial court. *State v. Gomez*, 211 Ariz. 494, ¶ 20, 123 P.3d 1131, 1136 (2005). A particular showing of prejudice is required. *Id.* ¶ 21.

Second-Degree Murder

**¶23** The trial court defined second-degree murder with the following instruction:

> The crime of second degree murder requires proof of one of the following:
>
> 1. The defendant intentionally caused the death of another person; or
>
> 2. The defendant caused the death of another person by conduct which the defendant knew would cause death or serious physical injury; or
>
> 3. Under circumstances manifesting extreme indifference to human life, the defendant recklessly engaged in conduct that created a grave risk of death and thereby caused the death of another person. The risk must be such that disregarding it was a gross deviation from what a reasonable person in the defendant's situation would have done; or
>
> 4. The defendant intentionally, knowingly or under circumstances manifesting extreme indifference to human life recklessly engaged in conduct that created a grave risk of death and caused the death of another person.

The court then clarified that "recklessly" as used in the above instruction "means that a defendant is aware of and consciously disregards a substantial and unjustifiable risk that conduct will result in the death of another," adding, "The risk must be such that

disregarding it is a gross deviation from what a reasonable person would do in the situation."

¶24        Eddington now contends the fourth point listed above was erroneous.  In his view, this portion of the instruction "inserted a fourth way of committing second degree murder, which reemphasized the third way (extreme indifference recklessness)." It follows, he claims, that the instruction confused jurors by "includ[ing] the terms intentional or knowing, which are not elements of extreme indifference second degree murder."  He also maintains the instruction was deficient because "it neglect[ed] to include the 'gross deviation' language required for extreme indifference second degree murder."  All these arguments rest on an inaccurate characterization and isolated reading of the provision in question.

¶25        Reading this instruction in its overall context, as we must, *see State ex rel. Thomas v. Granville*, 211 Ariz. 468, ¶ 8, 123 P.3d 662, 665 (2005), we find that it correctly stated the law, even though the fourth enumerated point was unnecessary and arguably inadvisable.  Contrary to Eddington's interpretation, this fourth provision neither "reemphasized" second-degree murder with extreme indifference to human life nor defined a new, "fictional" offense.  Rather, it simply restated the three ways of committing second-degree murder.  The statements regarding *mens rea* therefore were accurate.  Second-degree murder can be committed by "intentionally . . . [or] knowing[ly] . . . caus[ing] the death of another person," as the challenged provision states.  *See* A.R.S. § 13-1104(A)(1), (2).  What distinguishes this crime from first-degree murder, as the trial

16

court correctly noted elsewhere in its instructions, is that it lacks the element of premeditation. *See* A.R.S. §§ 13-1104(A), 13-1105(A)(1).

¶26 As to the fourth point's definition of reckless second-degree murder under circumstances manifesting extreme indifference to human life, *see* § 13-1104(A)(3), this, too, was a correct statement of the law when read together with the trial court's instructions as a whole. *See State v. Schrock*, 149 Ariz. 433, 440, 719 P.2d 1049, 1056 (1986). Eddington claims the repetition of the elements of reckless second-degree murder did not "include that the deviation must be a gross deviation." But he overlooks that, immediately after reading the challenged provision, the court instructed the jurors that a guilty verdict based on reckless second-degree murder required them to find the defendant's disregard for the risk of death represented a "gross deviation" from reasonable standards of behavior. *See* A.R.S. §§ 13-105(10)(c), 13-1104(A)(3).

¶27 Eddington further criticizes the instruction because it omitted the word "thereby" in the fourth point, which he claims implied "the conduct d[id] not necessarily have to be connected to the mental state." But the instruction implied nothing of the sort. In summarizing the three ways of committing second-degree murder, the trial court merely omitted this word to avoid the flawed syntax that would result from saying the offense could be committed by "intentionally or knowingly . . . thereby causing the death of another person." It was apparent in context that any reckless conduct must have been the cause of death for the jury to pronounce guilt. Thus, despite the formal differences

17

between the third and fourth points, the jury was able to reach a legally correct decision on the second-degree murder charge. *See Granville*, 211 Ariz. 468, ¶ 8, 123 P.3d at 665.

¶28        Although the fourth provision may be criticized for its redundancy, it correctly set forth the applicable law when read in conjunction with the court's other instructions. Accordingly, we find no error, fundamental or otherwise, that would entitle Eddington to relief.[11]

Heat-of-Passion Manslaughter

¶29        The trial court instructed the jury that second-degree murder and heat-of-passion manslaughter[12] were both lesser-included offenses of first-degree murder. In an instruction fashioned from *State v. LeBlanc*, 186 Ariz. 437, 438, 924 P.2d 441, 442 (1996), the court then told the jurors they must not consider the lesser manslaughter offense unless they either acquitted Eddington of the greater offense of second-degree murder or were unable to reach a verdict after deliberation. We found no error in the use of the *LeBlanc* instruction as applied to second-degree murder and heat-of-passion manslaughter in *State v. Garcia*, 220 Ariz. 49, ¶¶ 3, 6-8, 202 P.3d 514, 515, 516-17 (App. 2008).

_____

[11]We need not separately address Eddington's assertion that the instruction was also an impermissible "comment[] on the evidence," given his failure to properly develop a legal argument on this point as required by Rule 31.13(c)(1)(vi), Ariz. R. Crim. P. In any event, we believe this contention is founded upon the same mistaken interpretation of the instruction we have already rejected.

[12]Section 13-1103(A)(2), A.R.S, defines the offense as "[c]ommitting second degree murder as defined in § 13-1104, subsection A upon a sudden quarrel or heat of passion resulting from adequate provocation by the victim." For ease of reference, we refer to it simply as heat-of-passion manslaughter.

¶30 Eddington claims, however, that *Garcia* was wrongly decided and that *LeBlanc* does not apply to second-degree murder and heat-of-passion manslaughter because the latter is not truly a lesser-included offense of the former. *See Peak v. Acuña*, 203 Ariz. 83, ¶¶ 5-6, 50 P.3d 833, 834-35 (2002) (holding heat-of-passion manslaughter not lesser-included offense of second-degree murder for double jeopardy purposes). The manslaughter offense, he points out, is comprised of the same elements as second-degree murder but has the additional elements—or "circumstance[s]," as the court described them in *Peak*—of being caused by a sudden quarrel or heat of passion that is the result of adequate provocation. 203 Ariz. 83, ¶ 6, 50 P.3d at 834. Thus, he claims, as applied here, the *LeBlanc* instruction "prevented the jury from properly considering whether [Eddington] was guilty of second-degree murder or manslaughter."

¶31 This argument is logically compelling, given that we presume juries follow instructions, *LeBlanc*, 186 Ariz. at 439, 924 P.2d at 443, and a jury literally following the *LeBlanc* instruction would never reach the issue of adequate provocation in order to find a defendant guilty of manslaughter under § 13-1103(A)(2) rather than second-degree murder. *See Garcia*, 220 Ariz. 49, ¶¶ 6-7, 202 P.3d at 516 (acknowledging logic of argument against applying *LeBlanc* instruction to heat-of-passion manslaughter). But, although the point Eddington raises is academically interesting and may warrant future clarification by our supreme court, we need not resolve it here, given the fundamental-error posture of this case.

19

**¶32** Even if we assume it was error to give the *LeBlanc* instruction as to heat-of-passion manslaughter, the jury was aware both from defense counsel's argument and from the trial court's instructions that, if the murder was the result of a sudden quarrel or the heat of passion stemming from adequate provocation by the victim, Eddington would be guilty of the less serious offense of manslaughter, not second-degree murder. The jury was instructed pursuant to A.R.S. § 13-115(B) as follows: "If you determine that the defendant is guilty of either second degree murder or manslaughter by sudden quarrel or heat of passion but you have a reasonable doubt as to which it was, you must find the defendant guilty of manslaughter by sudden quarrel or heat of passion." The lesser offense was therefore in jurors' minds when they rendered their verdict on second-degree murder, and they had been clearly instructed that adequate provocation would be a ground for finding Eddington not guilty of the offense of which he was convicted. *Cf. Garcia*, 220 Ariz. 49, ¶ 7, 202 P.3d at 516 (presuming jury would not disregard definition of manslaughter when rendering verdict on second-degree murder). Accordingly, we do not find the instruction here resulted in prejudice.

**¶33** Given this lack of prejudice, we need not address Eddington's additional arguments based on his alternative contentions that (1) inadequate provocation is an element of second-degree murder or (2) adequate provocation is an affirmative defense that a defendant bears the burden of proving by a preponderance of the evidence. Assuming Eddington is correct on either point, the jury's verdict here included an implicit finding that the murder was not the result of adequate provocation. And, as to

20

the second point specifically, he was not prejudiced to the extent the trial court's instructions relieved him of his burden of proof. *Cf. State v. Valverde*, 220 Ariz. 582, ¶ 17, 208 P.3d 233, 237 (2009) (finding no prejudice in failure to instruct jury regarding defendant's burden of proving self-defense). Moreover, Eddington's failure to support his prejudice argument in his opening brief with citations to the record provides an independent ground to reject his claims. *See* Ariz. R. Crim. P. 31.13(c)(1)(vi) (requiring appellant to provide citation to record for each contention raised). Because he has not discharged his burden of showing prejudice pursuant to *Henderson*, we deny relief.

Manslaughter

**¶34** The trial court instructed the jury that it could consider the lesser offense of manslaughter only if it acquitted Eddington of first- and second-degree murder and heat-of-passion manslaughter or if, after a full consideration of the facts, it was unable to reach a verdict on these three offenses. The court then provided the following manslaughter instruction:

> The crime of manslaughter requires proof that the defendant:
>
> 1. caused the death of another person; and
>
> 2. was aware of and showed a conscious disregard of a substantial and unjustifiable risk of death.
>
> The above definition of recklessly applies to this offense.
>
> Second degree murder and manslaughter may both result from recklessness. The difference is that the culpable

21

recklessness involved in manslaughter is less than the culpable recklessness involved in second degree murder.

If you determine that the defendant is guilty of either second degree murder or manslaughter but you have a reasonable doubt as to which it was, you must find the defendant guilty of manslaughter.

¶35 Eddington contends the trial court "prejudicially misstated the law by erroneously defining reckless manslaughter as a lesser included offense of heat of passion manslaughter." He alleges he suffered prejudice, specifically, because "the jury was instructed that it had to either acquit [or hang] on heat of passion manslaughter . . . before it could consider reckless manslaughter," when jurors should have been "permitted . . . and instructed to . . . consider both forms of manslaughter at the same time."

¶36 But we find no prejudice here. The jury was properly instructed that manslaughter is a lesser-included offense of reckless second-degree murder. *See State v. Valenzuela*, 194 Ariz. 404, ¶ 11, 984 P.2d 12, 14-15 (1999). The jury was also made aware that second-degree murder and manslaughter are similar offenses and that, to find Eddington guilty of the greater offense, all jurors had to be convinced beyond a reasonable doubt that he was guilty of second-degree murder rather than manslaughter. The record thus suggests the jury necessarily considered the elements of manslaughter pursuant to A.R.S. § 13-1103(A)(1) when it found Eddington guilty of second-degree murder.

¶37 To the extent the trial court erred in informing the jurors they first had to consider heat-of-passion manslaughter before they could consider reckless manslaughter,

22

any such error did not affect the verdict. Thus, no prejudice has been shown on the record before us.

**Disposition**

¶38        For the foregoing reasons, we affirm Eddington's conviction and sentence.

/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Judge

CONCURRING:

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge

K E L L Y, Judge, specially concurring.

¶39        I concur with my colleagues' decision affirming Eddington's conviction because Eddington was not prejudiced by the trial court's refusal to strike a venireperson for cause. But I disagree with their conclusion that the court abused its discretion by not striking the deputy for cause. And I disagree with their creation of a new per se rule disqualifying peace officers from jury service when their agency conducted the investigation that is the subject of a criminal trial. As a preliminary matter, it is unnecessary for us to address whether the court erred when it denied Eddington's motion to strike the deputy for cause. "A defendant in a criminal case must show prejudice" before he is entitled to harmless error review for the curative use of a peremptory

23

challenge. *State v. Hickman*, 205 Ariz. 192, ¶ 28, 68 P.3d 418, 424 (2003). Because Eddington failed to prove the denial of his challenge for cause resulted in a jury that could not be fair and impartial, he has shown no prejudice. Absent a showing of prejudice, Eddington is not entitled to review, and we need not consider or analyze whether the court erred in refusing to strike the deputy for cause. But my colleagues nevertheless have granted review and decided that the trial court abused its discretion. I disagree.

¶40 Here, the court conducted appropriate voir dire on all of the issues potentially related to whether the deputy should have been struck for cause. After the court learned that the deputy was employed by the Pima County Sheriff's Department and knew "about half" of the witnesses, it asked him whether his employment and familiarity with witnesses would affect his ability to be fair and the deputy said it would not. The deputy expressly stated that neither his training in law enforcement nor his employment as a court security officer for the previous two years would affect his ability to be fair and impartial.

¶41 At the request of Eddington's counsel, the court called the deputy to the bench and allowed counsel to question him. He told her he did not recognize Eddington or the names of his codefendants and that he had limited contact with defendants in the courthouse. He stated that other than the two years he had been working as a courtroom deputy, he had been a detective in Green Valley and "a corrections officer at [the] very beginning." The deputy told counsel he knew, but had not worked with or had a personal

24

relationship with, one of the investigating detectives, and that he knew "[m]aybe a third" of the other investigators. The deputy said that he would not assign more credibility to officers from the same agency. He also reported he had heard nothing about the case. Based on the deputy's answers, the court concluded there was "not sufficient basis to strike him for cause." The trial court's decision is entitled to deference because the trial court has the opportunity to observe "the prospective juror's demeanor and the tenor of his answers," *State v. Munson*, 129 Ariz. 441, 443, 631 P.2d 1099, 1101 (1981), and "is in a position to determine first hand whether a juror can render a fair and impartial verdict," *State v. Rose*, 121 Ariz. 131, 139, 589 P.2d 5, 13 (1978).

¶42 Relying upon A.R.S. § 21-211, my colleagues conclude today that the trial court erred by failing to disqualify the deputy because he had an interest in the case. "The decision as to whether a juror [is] disqualified in a particular case rests in the sound discretion of the trial court, based upon the evidence." *State v. Moraga*, 98 Ariz. 195, 200, 403 P.2d 289, 293 (1965). Although Eddington never squarely raised this issue in the trial court,[13] it is presumed the court knew the criteria set forth in A.R.S. § 21-211 for disqualification of jurors. *Cf. State v. Ramirez*, 178 Ariz. 116, 128, 871 P.2d 237, 249 (1994) ("[T]he trial court is presumed to know and follow the law."). The trial court conducted appropriate voir dire on all of the issues potentially related to whether the

---

[13]The issue of whether the deputy would be disqualified from jury service because he had an interest in the case based on his employment was neither raised in the trial court nor in Eddington's opening brief. It was not until we requested supplemental briefing on this issue that any party addressed it.

deputy might have an interest in the case. Thus, it gave focused attention to the facts which might have supported such a finding. Having done so, the court implicitly concluded that those facts did not support a finding that the deputy was disqualified from jury service on this case.

¶43 I cannot agree with my colleagues' finding of error based on the application of their new per se rule that peace officers must be disqualified when their agency conducted the criminal investigation because they "have a particular interest in seeing that matters their offices have investigated are prosecuted successfully." Although I agree there are many situations in which it would be appropriate for the trial court, in the exercise of its discretion, to disqualify a similarly situated venireperson, I reject the creation of a per se rule which strips the trial court of its fact-finding role and discretion.

¶44 I disagree with my colleagues' announcement of this new rule because such action is more appropriate for the legislature or our supreme court, in its rule-making capacity, after due consideration of the rule's effect on the various jurisdictions within our state and the practicality of its application in connection with multi-agency investigations. A rule-making body could address, for example, my concern that the rule sweeps too broadly. In a county with millions of residents, thousands of law enforcement officers, and great distances between its communities, there will be situations in which the court appropriately finds that the peace-officer venireperson had no direct or indirect interest in the outcome of the criminal case investigated by his or her agency. At the same time, the rule is too narrow to serve its purported purpose because it does not

26

encompass other employees of investigating agencies who share the same alleged interests as the peace officers. I see no reasoned basis to exclude from a criminal jury peace officers employed by the investigating law enforcement agency, but not counsel or clerical and laboratory employees employed by the same agency. Additionally, my colleagues have not addressed the rule's effect on small counties with small jury pools.

**¶45** Neither our supreme court, in modifying the rule governing challenges for cause, nor the legislature, in amending the statute governing excuse from jury duty, found it necessary to create such a per se rule, even though these were logical opportunities for such action had either the legislature or the court considered it appropriate. Rule 18.4(b), Ariz. R. Crim. P., provides that the trial court shall strike a juror for cause "[w]hen there is reasonable ground to believe that a juror cannot render a fair and impartial verdict." My colleagues cite the comment to this rule in support of their position, stating that a challenge for cause may arise from the fact that a venireperson "stands in the relationship of . . . master and servant" to a party. But, that comment states that the list of possible grounds for disqualification, which had been part of the 1956 Arizona Rules of Criminal Procedure, and the source of the ground of a master-servant relationship, was removed from the rule in order to "direct the attention of attorneys and judges to the essential question—whether a juror can try a case fairly." Thus, the court moved away from a per se rule in favor of a more balanced approach focused on whether a potential juror could be fair. That is a matter better determined by the trial court.

27

¶46        Finally, I note that our legislature recently has provided that a peace officer may apply to be excused temporarily from jury duty. A.R.S. § 21-202(B)(5). The peace officer's employer is expressly prohibited from influencing in any way the peace officer's decision to seek to be excused from jury service. Thus, in recently considering the propriety of having peace officers serve as jurors, our legislature has clarified that peace officers have that right, and has given the peace officer the right to decide if he or she wishes to serve. In view of the legislature's recent consideration of peace officers' jury service, I expect that, if the legislature had wished to create a per se prohibition against peace officers sitting on juries in certain circumstances, it would have done so, as have the legislatures of other states.[14] *Cf.* Cal. Civ. Proc. Code § 219(b)(2) ("[N]o peace officer . . . shall be selected for voir dire in criminal matters."); Cal. Civ. Proc. Code § 229(b) ("A challenge for implied bias may be taken" if the venireperson "[s]tand[s] in the relation of . . . master and servant . . . to either party . . . ."); Colo. Rev. Stat. § 16-10-103(1)(k) ("The court shall sustain a challenge for cause" if "[t]he juror is a compensated employee of a public law enforcement agency or a public defender's office.").

¶47        Accordingly, because we are not required in the first instance to reach the issue of error and because the record supports the trial court's exercise of its discretion in denying Eddington's motion to strike the deputy for cause, I disagree with my

---

[14]Two of the three out-of-state cases upon which my colleagues rely were decided in states where such specific statutory support for a rule of this nature exists. *See People v. Terry*, 35 Cal. Rptr. 2d 729, 732 (Ct. App. 1994); *Tate v. People*, 247 P.2d 665, 670-71 (Colo. 1952).

28

colleagues' conclusion that the court abused its discretion in refusing to strike the deputy or disqualify him for cause. Because Eddington failed to raise the issue of disqualification under § 21-211 in his opening brief and because the creation of a per se disqualification rule is more appropriate for the legislature or the supreme court in its rule-making capacity, I cannot agree with today's creation of a broad new rule disqualifying certain peace officers from serving as jurors. I concur with the majority opinion in all other respects.

/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Judge