266 P.3d 1057

**STATE of Arizona, Appellee,**

v.

**Douglas Lee EDDINGTON, Appellant.**

**No. CR–11–0040–PR.**

Supreme Court of Arizona, En Banc.

Dec. 20, 2011.

---

362

Thomas C. Horne, Arizona Attorney General by Kent E. Cattani, Chief Counsel, Capital Litigation Section, Phoenix, David A. Sullivan, Assistant Attorney General, Tucson, Attorneys for State of Arizona.

Robert J. Hirsh, Pima County Public Defender by Rebecca A. McLean, Deputy Public Defender, Stephen Richard Elzinga, Rule 38 Law Student, Tucson, Attorneys for Douglas Lee Eddington.

## OPINION

BERCH, Chief Justice.

¶ 1 Any person "interested directly or indirectly in [a] matter" is disqualified from serving as a juror for that case. Ariz. Rev. Stat. ("A.R.S.") § 21–211(2) (2002). The question before the Court is whether a peace officer employed by the law enforcement agency that investigated a criminal case has such a disqualifying interest.[1] The answer is yes.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2 Douglas Lee Eddington was charged as an accomplice in the murder of the son of a Tucson police officer. During voir dire, one

1. We use the term "peace officer" as it is defined in A.R.S. §§ 1–215(28) (Supp.2011) and 13–

potential juror stated that he was employed as a deputy sheriff with the Pima County Sheriff's Department, the law enforcement agency that had investigated the crime, and knew between one-third and one-half of the prospective witnesses, including the lead detective. The deputy had been employed by the Pima County Sheriff's Department for twenty-four years and at that time was assigned to the Pima County Superior Court security detail. He acknowledged that he therefore understood why two officers were present in the courtroom, suggesting that he knew Eddington was in custody.

¶ 3 Based on these facts, Eddington moved to strike the deputy for cause. The trial court denied the motion, relying on the deputy's avowals that he could be fair and impartial. Eddington then used a peremptory strike to remove the deputy from the panel. The jury ultimately found Eddington guilty of second degree murder.

¶ 4 On appeal, a majority of the court of appeals held that the trial court erred in refusing to strike the deputy, reasoning that peace officers employed by the law enforcement agency that investigated the case are "interested persons" disqualified by A.R.S. § 21–211(2). *State v. Eddington,* 226 Ariz. 72, 76 ¶ 8, 244 P.3d 76, 80 (App.2010). But finding no prejudice because the deputy had not participated in deciding the case, the court affirmed the conviction. *Id.* at 79 ¶ 19, 244 P.3d at 83 (citing *State v. Hickman,* 205 Ariz. 192, 199 ¶ 31, 68 P.3d 418, 425 (2003)). The concurring judge agreed that the conviction should be affirmed, but disagreed that peace officers should be automatically disqualified from serving as jurors when their employing agency conducted the criminal investigation. *Id.* at 83 ¶ 39, 244 P.3d at 87 (Kelly, J., specially concurring).

¶ 5 We granted review of the State's petition because the application of A.R.S. § 21–211(2) in this context is an issue of statewide importance. We have jurisdiction under Article 6, section 5, clause 3 of the Arizona Constitution and A.R.S. § 12–120.24 (2003).

105(29) (Supp.2011).

## II. DISCUSSION

¶ 6 The right to a jury trial requires unbiased, impartial jurors. *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *accord State v. Miller*, 178 Ariz. 555, 557, 875 P.2d 788, 790 (1994). States may determine the qualifications for state jury service, so long as juries remain fair and representative of the community. *Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).

¶ 7 Both a statute and Court rules set forth grounds on which potential jurors may be disqualified from jury service. *See* A.R.S. § 21–211; Ariz. R.Crim. P. 18.4(b); Ariz. R. Civ. P. 47(c).[2] Rule 18.4(b) directs dismissal for cause of potential jurors who cannot render a fair and impartial verdict. Section 21–211(4) similarly bars "[p]ersons biased or prejudiced in favor of or against either of the parties." While both statute and rule exclude those who cannot be fair, the statute also prohibits three other categories of persons from sitting as jurors: (1) witnesses in the action, (2) persons "interested directly or indirectly" in the case, and (3) relatives of the parties. A.R.S. § 21–211(1)–(3).

¶ 8 By broadly disqualifying four categories of persons from sitting on a jury for a specific case, § 21–211 serves at least three goals: (1) preserving the right to a fair trial by impartial jurors, (2) ensuring that jurors derive their knowledge about the case solely from information presented at trial to the jurors collectively, and (3) protecting the appearance of fairness, which helps instill public confidence in the judicial system. *See Press–Enter. Co. v. Superior Court*, 464 U.S. 501, 508, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (discussing "the appearance of fairness so essential to public confidence in the [criminal justice] system"); *accord State v. Hursey*, 176 Ariz. 330, 334, 861 P.2d 615, 619 (1993) (noting that "[j]ustice and the law must rest upon the complete confidence of the ... public") (internal quotation omitted); *see also Turner v. Louisiana*, 379 U.S. 466, 472–73, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965) (observing that verdict must be based on evidence

developed during trial); *accord Miller*, 178 Ariz. at 557, 875 P.2d at 790.

¶ 9 As a statutory construction matter, an "interest" must differ from "bias" and "prejudice" because the latter two terms are addressed together in subsection (4) of § 21–211, while "interest" is separately addressed in subsection (2). Had the legislature intended these words to have the same or similar meanings, it likely would have included all three terms in the same subsection. Moreover, if the terms mean the same thing, then one subsection is redundant, and we generally construe statutes so that no part is rendered redundant or meaningless. *See State v. Thompson*, 204 Ariz. 471, 475 ¶ 10, 65 P.3d 420, 424 (2003).

¶ 10 The statute does not define the terms direct or indirect interest, but Arizona cases provide some guidance. For example, "[j]urors who are insured by an insurance company that is a party in the case" have been deemed interested persons because in deciding the case, they may improperly consider whether a ruling might affect their insurance premiums. *Lopez v. Farmers Ins. Co.*, 177 Ariz. 371, 374, 868 P.2d 954, 957 (App.1993). Similarly, "every stockholder of a private corporation, or a corporation exercising the functions defendant exercises, is interested in the event of a suit brought against his company and therefore, upon challenge for cause, should be excused." *Salt River Valley Water Users' Ass'n v. Berry*, 31 Ariz. 39, 43–44, 250 P. 356, 357 (1926) (citing statutory provision similar to § 21–211(2)). In both cases, the court disqualified the prospective jurors without requiring a showing that their interest might have affected their ability to fairly and impartially deliberate. The potential for an appearance of bias sufficed to require disqualification regardless of any juror-specific finding of actual bias.

¶ 11 Yet an interest under A.R.S. § 21–211(2) is not limited to pecuniary concerns. It may also include a desire to see one side prevail in litigation or an alignment with or loyalty to one party or side. In criminal cases, for example, officers of the agency that conducted the investigation work closely with

2. Because this is a criminal case, we do not     address Civil Rule 47(c).

the prosecution and are often considered part of the prosecution team. *See, e.g., Carpenter v. Superior Court,* 176 Ariz. 486, 490, 862 P.2d 246, 250 (App.1993) (finding "law enforcement agency investigating a criminal action operates as an arm of the prosecutor for purposes of obtaining information" under Arizona Rules of Criminal Procedure). The chief investigator may sit at counsel table with the prosecution team, even if the investigator will testify in the matter. Ariz. R.Crim. P. 9.3(d); *accord State v. Williams,* 183 Ariz. 368, 379–80, 904 P.2d 437, 448–49 (1995). Because investigators are part of the prosecution team, the obligation of prosecutors to disclose exculpatory materials extends to them. *See Kyles v. Whitley,* 514 U.S. 419, 437–38, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *see also Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Ariz. R.Crim. P. 15.1(f)(2), (3). And the investigating law enforcement agency, by making an arrest and presenting the case to the prosecutor and cooperating thereafter, indicates its determination that probable cause exists and suggests that a conviction should ensue. Accordingly, courts have recognized the interest shared by the investigating agency and the prosecution in advocating for a conviction. *See, e.g., Arizona v. Evans,* 514 U.S. 1, 15, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995) (identifying "the law enforcement team engaged in the often competitive enterprise of ferreting out crime") (citing *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948)); *State v. Meza,* 203 Ariz. 50, 55 ¶ 21, 50 P.3d 407, 412 (App. 2002).[3]

¶ 12 In addition to the outward appearance of an interest, a co-employee might feel pressure in judging the "credibility and conduct of coworkers, a role with potential consequences for his future working relationships." *Eddington,* 226 Ariz. at 77 ¶ 11, 244

P.3d at 81. A deputy sitting as a juror might hesitate to join a defense verdict in a criminal case investigated by fellow officers from his own department and presumptively approved by his superior. *Id.* at ¶ 10.

¶ 13 Beyond the general perception of fairness, § 22–211 also seeks to ensure that jurors decide the facts and return a verdict based solely on evidence presented to them during the trial, not on information they glean from other sources. *See Parker v. Gladden,* 385 U.S. 363, 364, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966) (noting a defendant's right to a jury that considers only the evidence presented at trial). A juror who works for the investigating agency might have access to information not available to other jurors. This concern is exemplified in this case, where the deputy had information relating to Eddington's in-custody status. By virtue of his position, the deputy might also have had other inside information about the investigators or the type of investigation conducted. Such knowledge undermines a defendant's right to be presumed innocent. *See Estelle v. Williams,* 425 U.S. 501, 503–04, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) (urging courts to "be alert to factors that may undermine the fairness of the fact finding process").

¶ 14 A primary purpose of § 21–211 is to promote public confidence in the judicial system. Everyone participating in and observing a trial should have confidence that the trial is fair in all respects. The deputy here thought he could decide fairly, and perhaps he could have done so, as the trial judge concluded. But if the defendant's jury had consisted of twelve peace officers employed by the investigating agency, the public likely—and the defendant undoubtedly—would reasonably perceive that a fair trial had not been had, even if all the jurors had sworn

---

**3.** The job description of a Deputy Pima County Sherriff further illustrates the role a deputy may have in investigating and prosecuting a case. Investigative tasks include preparing evidence for courtroom presentation; testifying in court; investigating criminal activity; preserving and analyzing facts and evidence; interviewing complainants, the accused, witnesses, and the preliminary investigating officer; preparing and submitting reports of criminal offenses, including

modus operandi and description of incriminating evidence, for determination of guilt and prosecution of charges; among other duties. A deputy employed by the same department that conducted the investigation may work with other deputies engaged in investigative tasks related to the case at hand. *See* Pima County Sheriff's Department, Deputy Sheriff: Job Description, available at http://www.pimasheriff.org/ careers/deputy-sheriff/job-description/.

during voir dire that they could be fair and impartial.

¶ 15 The State argues that peace officers' jury service is covered by A.R.S. § 21–202(B)(5) (Supp.2011). That statute, however, simply permits peace officers to opt out of jury service. An excuse from jury service differs from a disqualification. *See* A.R.S. §§ 21–101 to –236 (2002 & Supp.2011). Once a peace officer elects to become a member of the jury pool, that officer's participation in the case, like that of any other venire person, is subject to § 21–211.

¶ 16 The State also cites *State v. Hill* for the proposition that a police officer acquainted with the prosecutor and two of the state's witnesses may serve on a jury if he says he can remain fair and impartial. 174 Ariz. 313, 848 P.2d 1375 (1993). But the facts here differ from those in *Hill.* There, although the challenged juror was a "police officer," *id.* at 319, 848 P.2d at 1381, the crime was investigated by "deputies," *id.* at 317, 848 P.2d at 1379, suggesting that the officers worked for different law enforcement agencies. The opinion mentions no ties between the challenged juror and the investigating agency. *Hill* recognizes that simply being a peace officer, without more, does not disqualify one from jury service in a criminal case, a result with which we agree.

¶ 17 Here, the deputy was neither exempt nor excused from jury service solely because of his occupation. Rather, he was disqualified from serving as a juror on this particular case because of his interest in the matter arising from the fact of his employment by the same agency that conducted the investigation.

■ ¶ 18 The working relationship between the prosecution and the investigating agency is the type of interest § 21–211(2) is meant to cover. Like the court of appeals, we therefore conclude that a peace officer currently employed by the law enforcement agency that investigated the case is an "interested person" who is disqualified from sitting as a juror. Our conclusion does not depend on the particular officer's knowledge of witnesses or facts of the case or the officer's belief in his or her ability to be fair and impartial.

## III.  CONCLUSION

¶ 19 For the reasons set forth above, we affirm the opinion of the court of appeals.

CONCURRING:  ANDREW D. HURWITZ, Vice Chief Justice, W. SCOTT BALES, A. JOHN PELANDER and ROBERT M. BRUTINEL, Justices.