NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JUAN MANUEL RODRIGUEZ, *Appellant.*

No. 1 CA-CR 23-0385

FILED 09-17-2024

Appeal from the Superior Court in Mohave County
No. S8015CR202200410
The Honorable Douglas Camacho, Judge *Pro Tempore*

**AFFIRMED IN PART; VACATED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey Ball
*Counsel for Appellee*

Harris & Winger PC, Flagstaff
By Chad Joshua Winger
*Counsel for Appellant*

_____

## MEMORANDUM DECISION

Presiding Judge Michael S. Catlett delivered the decision of the Court, in which Judge Jennifer M. Perkins and Vice Chief Judge Randall M. Howe joined.

_____

**C A T L E T T**, Judge:

**¶1**        Juan Manuel Rodriguez ("Rodriguez") appeals his convictions for attempted first-degree murder, three counts of aggravated assault, drive-by shooting, discharging a firearm at a nonresidential structure, unlawful flight from a pursuing law enforcement vehicle, possession of a narcotic drug for sale, possession of a dangerous drug for sale, money laundering, and misconduct involving weapons. Rodriguez challenges the superior court's denial of his motions to sever charges, strike four jurors for cause, and give an adverse-inference instruction under *State v. Willits*, 96 Ariz. 184 (1964). He also contends the court erred by admitting drug profile evidence, precluding evidence favorable to the defense, and overruling his objections to alleged prosecutorial error. Finally, Rodriguez argues there was insufficient evidence to support most of his convictions. The State concedes one conviction lacks adequate support. Based on that concession, we vacate Rodriguez's conviction and sentence for discharging a firearm at a nonresidential structure. We otherwise affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        Because Rodriguez challenges the sufficiency of the evidence to support his convictions, we recite the facts in the light most favorable to sustaining those convictions. *See State v. Guerra*, 161 Ariz. 289, 293 (1989).

**¶3**        Detective S. and his partner saw two vehicles leave a residence they were surveilling, and each followed one vehicle. Detective S. tailed a BMW driven by Rodriguez. After the BMW driver ran a stop sign and accelerated beyond the speed limit, Detective S. activated the lights and sirens on his unmarked Dodge Charger. As Detective S. pursued the BMW at high speed, Rodriguez spun the BMW around and drove head-on at Detective S., who swerved onto the shoulder to avoid a collision. Detective S. turned to follow the BMW and noticed it had spun out and stopped partially off the road. Detective S. stepped out of his car to command the BMW's occupants to show their hands. Detective S. saw the driver

"digging around on the floorboard" and making "frantic movements" while slowly backing up the BMW.

¶4 Concerned that Rodriguez planned to hit him, the detective got back into his car and then heard automatic gunfire coming from the BMW. Detective S. returned fire as the BMW rammed the Charger's left rear tire area, impairing its maneuverability. Detective S. struggled to control the vehicle while driving away and Rodriguez pursued and shot at the detective. While driving, Detective S. returned fire through the Charger's back window when a bullet struck him in the upper back. Bullets from Rodriguez's gun also struck a residence and the tire of a parked truck. Detective S. located other responding officers and got a ride to the hospital. The Charger was riddled with bullet holes, including two in the driver's seat headrest. At the hospital, Detective S. removed his shirt and the bullet that wounded him fell out.

¶5 A short time later, a law enforcement helicopter and a sheriff's deputy observed Rodriguez and the BMW in a desert area near Mohave Community College. Rodriguez, now alone, exited the driver's seat, opened the left rear door, and retrieved a bag he slung around his neck. He walked away from the car, stepped down into a wash, and attempted to hide the bag in some brush. When Rodriguez emerged, he held a gun in each hand. As he walked toward the college, he fired a shot at Deputy G., who was tracking him.

¶6 Just before reaching campus, Rodriguez collapsed—he had a gunshot wound to his torso. He was unresponsive as officers handcuffed and searched him. In addition to the two guns he was carrying, he had a third gun, $3,870 in cash, and a ledger containing names and dollar amounts paid or owed.

¶7 The crime scenes near the college and the shootings with Detective S. were secured and searched. The BMW contained a semiautomatic weapon on the driver's side floorboard, another drug ledger hidden in the driver's side door panel, and an Uzi-style firearm, jewelry, coin collections, and a small scale, all in the trunk. Rodriguez's blood was found on an airbag deployed in the driver's seat and on the left rear passenger doorframe. Along the desert path Rodriguez took from the BMW to the college, law enforcement found a bag containing $34,504 in cash, a "gram scale" designed to measure lightweight items, and baggies containing fentanyl and methamphetamine. Officers found 17 shell casings on the streets where Rodriguez shot at Detective S—all 17 were fired from a weapon Rodriguez possessed when he collapsed.

¶8            The State charged Rodriguez with attempted first-degree murder, three counts of aggravated assault, discharging a firearm at a residence, discharging a firearm at a nonresidential structure, drive-by shooting, possession of a narcotic drug for sale (fentanyl), possession of a dangerous drug for sale (methamphetamine), money laundering, unlawful flight from a pursuing law enforcement vehicle, and misconduct involving weapons.  At trial, Detective S. identified Rodriguez as the BMW's driver, and eyewitnesses to the incident identified the BMW's driver as the shooter. The jury acquitted Rodriguez of discharging a firearm at a residence and found him guilty of the remaining charges.  The superior court sentenced him to concurrent and consecutive prison terms totaling 169 years.

¶9            Rodriguez timely appealed.  We have jurisdiction.  *See* A.R.S. §§ 12-120.21(A)(1), 13-4033(A).

## DISCUSSION

### I.    Severance

¶10            Rodriguez argues the superior court erred by denying his pretrial motion to sever the drug-related counts from the shooting-related counts.    We review a denial of severance for an abuse of discretion, considering the evidence before the court when it denied the motion.  *State v. LeBrun*, 222 Ariz. 183, 185 ¶ 5 (App. 2009*); State v. Goudeau*, 239 Ariz. 421, 444–45 ¶ 60 (2016).  Because Rodriguez did not renew his motion to sever during trial, he must establish fundamental error.  *See* Ariz. R. Crim. P. 13.4(c); *Goudeau*, 239 Ariz. at 443 ¶ 54.

¶11            Offenses may be tried together if they "(1) are of the same or similar character; (2) are based on the same conduct or are otherwise connected in their commission; or (3) are alleged to have been a part of a common scheme or plan."  Ariz. R. Crim. P. 13.3(a).  Joint trials are favored in the interest of judicial economy, *see State v. Allen*, 253 Ariz. 306, 309 ¶ 56 (2022), but the superior court must sever "if necessary to promote a fair determination of [the] defendant's guilt or innocence," Ariz. R. Crim. P. 13.4(a).  Charges are "connected together in their commission" when evidence of the charges "[is] so intertwined and related that much the same evidence was relevant to and would prove [all the charges sought to be joined], and the crimes themselves arose out of a series of connected acts." *State v. Prion*, 203 Ariz. 157, 162 ¶ 32 (2002).

¶12            In analyzing Rodriguez's motion to sever, the court considered the following evidence:  within a short period of time, Rodriguez tried to elude and shot at police; drove into the desert where he

tried to hide drugs, a scale, and money; and fired a shot at police before collapsing from a gunshot wound while carrying three firearms, more cash, and a drug ledger. In opposing severance, the State argued the charges arose from "the same nucleus of events," were contemporaneous, and would be cross-admissible to establish Rodriguez's motive, identity, and absence of mistake. The superior court concluded the counts were properly joined under Arizona Rule of Criminal Procedure 13.3(a)(2) and (a)(3) and that any risk of unfair prejudice did not substantially outweigh the probative value of cross-admission.

¶13        The superior court correctly concluded the charges were connected in their commission, *see* Ariz. R. Crim. P. 13.3(a)(2), and not required to be severed based on a risk of unfair prejudice, *see* Ariz. R. Evid. 403. The crimes took place over a brief, unbroken period; the crimes were interrelated; and it would have been difficult for jurors to understand one set of crimes without evidence of the others. *See State v. Martinez-Villareal*, 145 Ariz. 441, 445–46 (1985); *State v. Comer*, 165 Ariz. 413, 418–19 (1990).

¶14        Rodriguez also fails to show prejudice. Evidence of the joined counts would have been cross-admissible at separate trials under Arizona Rule of Evidence 404(b). *See State v. Johnson*, 212 Ariz. 425, 430 ¶ 11 (2006); *State v. Atwood*, 171 Ariz. 576, 612 (1992). The drug evidence tended to show Rodriguez's motive, and absence of mistake, in shooting at and fleeing from police. *See State v. Williams*, 183 Ariz. 368, 376 (1995). The shooting evidence tended to show Rodriguez's consciousness of guilt in committing the drug offenses. *See id.* at 375–76. The superior court properly instructed the jury to separately consider each charge and that each charge needed to be proven beyond a reasonable doubt. *See Johnson*, 212 Ariz. at 430 ¶ 13.

## II.    Profile Evidence

¶15        Rodriguez argues testimony from the State's expert associating drug dealers with guns was inadmissible drug-profile evidence. The superior court largely denied his pretrial motion to preclude generalized drug evidence, and it overruled his similar objections during trial. We review those evidentiary rulings for an abuse of discretion. *See State v. Haskie*, 242 Ariz. 582, 585 ¶ 11 (2017).

¶16        "Profile evidence" typically refers to an "informal compilation of characteristics" commonly displayed by persons engaged in a particular type of criminal activity. *State v. Lee*, 191 Ariz. 542, 544 ¶ 10 (1998) (cleaned up). Profile evidence is inadmissible when offered only to show that because the defendant "shares characteristics—many of them

innocent and commonplace—with a certain type of offender, [the defendant] must also possess the same criminal culpability." *Id.* at 545 ¶ 14; *see also Haskie*, 242 Ariz. at 585 ¶ 14.

¶17          But evidence about typical offender behaviors is not always inadmissible. Such evidence may be admitted when it "has significance beyond the mere suggestion that because an accused's conduct is similar to that of other proven violators, he too must be guilty." *Id.* at 546 ¶ 19. Thus, behavioral evidence may be admitted "to assist a jury in understanding the modus operandi of a drug-trafficking organization," *State v. Escalante*, 245 Ariz. 135, 142 ¶ 22 (2018), or "to explain how a person's actions may indicate their active participation in a crime," *State v. Garcia-Quintana*, 234 Ariz. 267, 271 ¶ 13 (App. 2014). The fact that *modus operandi* evidence "may indicate [the defendant's] active participation in a crime" does not transform it into inadmissible profile evidence. *Id.* at ¶¶ 13, 15; *see also Escalante*, 245 Ariz. at 143 ¶ 25.

¶18          Here, an expert testified that firearms are commonly found when investigating drug crimes because drug sellers carry guns to protect themselves, their money, and their product. The expert also testified that drug buyers may make purchases with money, but they also barter other things of value, like jewelry and electronic equipment.

¶19          The superior court did not abuse its discretion in admitting that testimony. The expert's description of why drug sellers commonly carry guns was *modus operandi* evidence explaining a general practice. The testimony did not suggest Rodriguez must be guilty of drug crimes simply because he was carrying a gun, and the expert did not compare the *modus operandi* evidence "with the conduct of [Rodriguez] in [this] particular case." *Garcia-Quintana*, 234 Ariz. at 271 ¶ 14. Similarly, the expert's testimony about people bartering items of value for drugs was *modus operandi* evidence. The testimony did not suggest that Rodriguez must be a drug dealer because he possessed items of value like jewelry and guns. The testimony was offered, rather, to explain why drug sellers might have such items in their possession. *See id.* at 271 ¶¶ 13, 15.

### III.    *Willits* Instruction

¶20          Rodriguez argued at trial that he was innocent of the charges premised on Detective S. being shot because evidence showed the detective was hit by a ricocheting bullet from his own gun. After the shooting, Detective S. gave his weapon to the lead investigating detective, who returned it about three weeks later. The State did not test the weapon, and

Rodriguez suggested that such testing could have linked it to the bullet that wounded Detective S. Rodriguez also argued that Detective S.'s weapon was unsuitable to be tested after being returned because it could have been altered at that point.

**¶21** Rodriguez asked the superior court to give an adverse-inference instruction under *Willits*, 96 Ariz. at 186. "To be entitled to a *Willits* instruction, a defendant must prove that (1) the state failed to preserve material and reasonably accessible evidence that could have had a tendency to exonerate the accused, and (2) there was resulting prejudice." *State v. Glissendorf*, 235 Ariz. 147, 150 ¶ 8 (2014) (cleaned up). The superior court declined to give the requested instruction, reasoning the State did not fail to preserve Detective S.'s firearm and the results of testing it would not have tended to exonerate Rodriguez. We review the court's refusal to give a *Willits* instruction for an abuse of discretion. *Id.* at ¶ 7.

**¶22** The superior court did not abuse its discretion. Rodriguez does not establish that the State failed to preserve Detective S.'s firearm. His speculation that the weapon could have been altered does not establish a failure to preserve it. *Cf. State v. Geotis*, 187 Ariz. 521, 525 (App. 1996); *Glissendorf*, 235 Ariz. at 150 ¶ 9. Rodriguez also fails to show that testing the firearm would have produced evidence having any tendency to exonerate him. Because the projectile recovered from Detective S.'s back was merely the internal core of a bullet that no longer had a jacket, the projectile lacked characteristics that could be matched to a particular weapon, including Detective S.'s firearm. *Cf. State v. Hernandez*, 250 Ariz. 28, 34 ¶ 21 (2020).

## IV. Preclusion of Evidence

**¶23** The superior court precluded testimony that law enforcement found no drug evidence when they searched Rodriguez's home, reasoning that the testimony was irrelevant. Rodriguez challenges that ruling, arguing it deprived him of his constitutional right to present a complete defense. We review evidentiary rulings for an abuse of discretion, but we consider constitutional claims *de novo*. *State v. Nordstrom*, 230 Ariz. 110, 114 ¶ 8 (2012).

**¶24** The superior court correctly precluded the testimony. The drug charges against Rodriguez were premised on drugs, money, scales, and ledgers he possessed on the day of the incident. The absence of drug evidence at Rodriguez's home had no bearing on whether he was guilty of the charged offenses. *See* Ariz. R. Evid. 401. Rodriguez's constitutional

right to present a defense was "subject to reasonable restrictions," including the application of evidentiary rules that "are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (citation omitted). Rodriguez fails to establish that Arizona Rule of Evidence 401's relevance requirement is arbitrary or that its application deprived him of a meaningful opportunity to present a complete defense.

## V.     Prosecutorial Error

**¶25**        Rodriquez argues he was deprived of a fair trial by inadmissible, prejudicial comments the prosecutor made during closing arguments in both the guilt and aggravation phases of trial. Rodriguez objected to the prosecutor's statement, in the guilt phase, that "[t]his entire case is nothing more than somebody who wants to be a cop killer." The court overruled the objection. During the aggravation phase, Rodriguez objected to the prosecutor's statement that when Rodriguez committed the drive-by shooting and discharged a firearm at a structure, "[w]e are lucky" that two non-victim witnesses "w[ere]n't killed." In response to Rodriguez's objection, the superior court instructed the jury to "only consider [the aggravating] circumstance for the charge that the defendant was found guilty of," and to "rely on [their] collective memory as to who the victim of each offense was."

**¶26**        We review the challenged statements for harmless error. *See State v. Johnson*, 247 Ariz. 166, 200 ¶ 133 (2019). We assess each allegation individually and consider whether they cumulatively caused an unfair trial. *Id.* To establish prosecutorial error, Rodriguez must show "the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Murray*, 250 Ariz. at 548 ¶ 13 (cleaned up). He can do so by showing the existence of misconduct and a reasonable likelihood such misconduct could have affected the verdict. *Id.*

**¶27**        Rodriguez argues the prosecutor's statement about him "want[ing] to be a cop killer" was not supported by evidence and encouraged jurors to determine his guilt "based on raw emotion and prejudice." We discern no error in the statement's admission. In exercising their "wide latitude" during closing arguments, prosecutors may argue "all reasonable inferences from the evidence" provided they do not "make insinuations that are not supported by the evidence" or "make arguments that appeal to the fears or passions of the jury." *State v. Morris*, 215 Ariz. 324, 336–37 ¶¶ 51, 58 (2007) (cleaned up). The prosecutor's "cop killer" statement was not unduly inflammatory and was supported by the

evidence—namely, that Rodriguez fired multiple shots knowing the intended target was a police officer.

¶28 Rodriguez also contends the prosecutor's comment that two non-victim witnesses could have been killed improperly suggested those witnesses were victims, asked jurors to view themselves in the witnesses' shoes, and appealed to juror sympathy. We again find no impropriety. The prosecutor referred to the non-victim witnesses while arguing that Rodriguez risked inflicting bodily harm when he discharged a firearm at a nonresidential structure while committing a drive-by shooting. The witnesses were present during those incidents, they heard the bullets whiz by, and the relevant aggravator does not apply only to threats of harm to a named victim of the offense. *See* A.R.S. § 13-701(D)(1). Thus, the prosecutor's reference did not improperly treat the witnesses as victims or appeal to the jurors' sympathy in lieu of the evidence presented at trial. Nor did the statement place jurors in the witnesses' shoes—that a juror might have been in the vicinity did not transform the prosecutor's statement into an improper appeal to personal fears. *Cf. Morris*, 215 Ariz. at 337 ¶ 58 (observing that the prosecutor improperly "singled out particular jurors and addressed them personally").

## VI. Motions to Strike Jurors for Cause

¶29 Rodriguez moved to strike four jurors for cause during *voir dire*. Rodriguez argues the superior court's refusal to strike those jurors, who then joined the jury panel, deprived him of a fair trial.

¶30 Criminal defendants have a right to an impartial jury. U.S. Const. amend. VI; Ariz. Const. art. 2, § 24. A person cannot be seated as a juror if the person is a "witness[ ] in the action," is "interested directly or indirectly in the matter under investigation," is related to a party, or is "biased or prejudiced in favor of or against" a party. A.R.S. § 21-211. Even if a person is not prohibited from serving under § 21-211, the superior court must excuse a juror "if there is a reasonable ground to believe that the juror . . . cannot render a fair and impartial verdict." Ariz. R. Crim. P. 18.4(b).

¶31 "In assessing a potential juror's fairness and impartiality, the trial court has the best opportunity to observe prospective jurors and thereby judge the credibility of each." *State v. Hoskins*, 199 Ariz. 127, 139 ¶ 37 (2000). The court's discretion over jury selection is accordingly broad, *see State v. Jimenez*, 255 Ariz. 550, 553 ¶¶ 5, 8 (App. 2023), and we will not upset its decision absent an abuse of discretion, *State v. Colorado*, 256 Ariz. 97 (App. 2023). As the proponent of error, Rodriguez must establish that

the challenged jurors were "incapable of rendering a fair and impartial verdict." *State v. Acuna Valenzuela*, 245 Ariz. 197, 209 ¶ 21 (2018) (cleaned up); *see also* Ariz. R. Crim. P. 18.5(h).

**¶32**         Rodriguez contends Juror M. should have been struck because he was a witness in the action. A.R.S. § 21-211(1). We are unpersuaded. A witness in the action is "limited to persons with personal knowledge of a material, disputed aspect of the case." *State v. Thornton*, 187 Ariz. 325, 330 (1996). Because Juror M.'s knowledge was confined to information about the response of fire and medical services personnel, which did not bear on any material, disputed issues at trial, Juror M. was not a witness in the action. *See id.* (holding that a person who had listened to the underlying events over a police scanner was not a witness because the information she heard "did not involve disputed facts").

**¶33**         Rodriguez also contends Juror M., Juror S., and Juror T. should have been struck because they were "interested directly or indirectly in the matter under investigation." A.R.S. § 21-211(2); *see also State v. Eddington*, 228 Ariz. 361, 363 ¶ 11 (2011). A juror's familiarity with some of the underlying events or law enforcement personnel involved in the case, does not automatically prevent the juror from serving. *See Acuna Valenzuela*, 245 Ariz. at 210 ¶ 32; *State v. Blackman*, 201 Ariz. 527, 533 ¶ 12 (App. 2002). Here, each challenged juror assured the court he or she could fairly and impartially decide the case based on the evidence presented. The trial judge was "in the best position to observe the potential jurors," *Johnson*, 247 Ariz. at 196 ¶ 106, and the record supports the judge's exercise of discretion in retaining each juror. Notably, of the two potential witnesses that Juror M. personally knew, only one testified—and only about a minor, undisputed issue with no cross-examination by Rodriguez. Although Juror S. and Juror T. each spoke of being fearful because of their loved ones' proximity to the shootings, their experience did not presumptively bias them against Rodriguez—his defense was that he was not the person who committed the shootings, not that they never occurred. *Cf. Thornton*, 187 Ariz. at 330. Moreover, the emotional impact of the crimes on the jurors did not bar them from serving on the jury. *See Johnson*, 247 Ariz. at 199 ¶ 126 (observing that a juror's experience as a victim "alone is not disqualifying").

**¶34**         Finally, Rodriguez contends Juror L. should have been struck because he was, at first, not certain he could be fair and impartial. "[A] juror's assurances of impartiality need not be couched in absolute terms." *Hoskins*, 199 Ariz. at 139 ¶ 37. Juror L. eventually assured the superior court he could be fair and impartial and would render a verdict based solely on the evidence presented. Considering the totality of Juror L.'s answers, *see*

Ariz. R. Crim. P. 18.5(h), his reference to the uncertainty of human nature when initially describing his ability to be fair and impartial did not require the superior court to strike him. *See Acuna Valenzuela*, 245 Ariz. at 210–11 ¶¶ 31–32; *cf. Jimenez*, 255 Ariz. at 550 ¶ 15. The superior court did not abuse its discretion in not striking Juror L.

## VII. Sufficiency of the Evidence

¶35 Finally, Rodriguez contends the evidence at trial was insufficient to support 9 of his 11 convictions. We review the sufficiency of evidence *de novo*, viewing all facts and resolving all evidentiary conflicts in favor of the verdict. *State v. Pena*, 235 Ariz. 277, 279 ¶ 5 (2014). We determine only whether substantial evidence supports the verdict. *Id.* "Substantial evidence is more than a mere scintilla and is such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Ellison*, 213 Ariz. 116, 134 ¶ 65 (2006) (cleaned up). "The substantial evidence required to support a conviction may be direct or circumstantial," *State v. Teagle*, 217 Ariz. 17, 27 ¶ 40 (App. 2007), and we do not "reweigh the evidence to decide if [we] would reach the same conclusions as the trier of fact," *State v. Barger*, 167 Ariz. 563, 568 (App. 1990).

### A. Attempted First-Degree Murder

¶36 A person commits attempted first-degree murder by intentionally committing an act that "is any step in a course of conduct planned to culminate in" the offense of first-degree murder. A.R.S. § 13-1001(A)(2). A person commits first-degree murder if "[i]ntending or knowing that the person's conduct will cause death, the person causes the death of another person . . . with premeditation." A.R.S. § 13-1105(A)(1).

¶37 There was sufficient evidence that Rodriguez was the person who fired his weapon at Detective S. Multiple eyewitnesses testified that the BMW's driver was the shooter, and ample evidence—including eyewitness testimony, video evidence, and forensic evidence—established that Rodriguez was the driver. The fact that Detective S. initially described the BMW's occupants as a white driver and a Hispanic male passenger did not prevent jurors from finding beyond a reasonable doubt that Rodriguez was the driver, and therefore the shooter. *See State v. Felix*, 234 Ariz. 118, 120–21 ¶ 10 (App. 2014).

¶38 There was also sufficient evidence of premeditation. The evidence showed that Rodriguez began firing at Detective S. after (1) he was aware the officer was attempting to stop him, (2) he intentionally drove at

11

Detective S.'s vehicle head on, and (3) Detective S. stepped out of his vehicle and commanded him to show his hands while he dug around the BMW's floorboard. The evidence further showed that Rodriguez shot at Detective S. a second time while he pursued the detective's vehicle after intentionally impairing it. In sum, jurors had ample evidence from which to conclude that Rodriguez "considered his act [before shooting at Detective S.] and did not merely react to an instant quarrel or in the heat of passion." *State v. Ovante*, 231 Ariz. 180, 184 ¶ 14 (2013).

### B. Aggravated Assault

**¶39** Rodriguez was convicted of committing three aggravated assaults with a deadly weapon—one causing physical injury to Detective S. and two causing reasonable apprehension of imminent physical injury to Detective S. and Deputy G. *See* A.R.S. §§ 13-1203(A)(1), (2), -1204(A)(2).

**¶40** Substantial evidence supports all three convictions. For the reasons given above, there was sufficient evidence Rodriguez shot at Detective S. Based on such evidence, along with the bullet holes found in the driver's side headrest of the Charger, jurors could further conclude that Detective S. was hit and injured by a bullet Rodriguez fired. And there was sufficient evidence that Deputy G. felt a reasonable apprehension of imminent physical harm. Deputy G. testified that after hearing the bullet from Rodriguez whiz past his head, he "was in fear that [Rodriguez] might fire another round and hit [him]," so he exited his vehicle, went behind it to "use [the] car as cover[,] and brought [his] rifle up on [Rodriguez] at that point." The jury could find, based on that testimony, that the deputy reasonably feared imminent injury.

### C. Drive-By Shooting

**¶41** Rodriguez was convicted of drive-by shooting, which required proof that he "intentionally discharg[ed] a weapon from a motor vehicle at a person, another occupied motor vehicle or an occupied structure." A.R.S. § 13-1209(A). Substantial evidence—which showed that Rodriguez intentionally fired a weapon from the BMW at Detective S. in the Charger—supports his conviction.

### D. Possessing Drugs for Sale

**¶42** Rodriguez was convicted of possessing a dangerous drug (methamphetamine) for sale and possessing a narcotic drug (fentanyl) for sale. *See* A.R.S. § 13-3407(A)(2); A.R.S. § 13-3408(A)(2). He argues there was insufficient evidence to satisfy the "for sale" element of each offense.

¶43 The State presented evidence that Rodriguez possessed 3.25 grams of fentanyl pieces, about 100 fentanyl tablets—which would provide up to 20 days of fentanyl for a typical user—and 10 grams of a crystalline substance containing methamphetamine—about 100 usable amounts. Based on that evidence, combined with Rodriguez's possession of scales, drug ledgers, and large amounts of cash, jurors could reasonably conclude that he possessed methamphetamine and fentanyl for sale. *See State v. Martinez*, 226 Ariz. 221, 224 ¶¶ 14–15 (App. 2011).

### E. Money Laundering

¶44 A person commits money laundering in the second degree under A.R.S. § 13-2317(B)(1) by "transfer[ring], transport[ing], . . . or conceal[ing] the existence or nature of racketeering proceeds knowing or having reason to know that they are the proceeds of an offense." Rodriguez contends there was insufficient evidence that the money he possessed came from drug sales. The record shows otherwise. Evidence that Rodriguez was carrying a large amount of cash—which he tried to hide—along with drugs, scales, and drug ledgers provided substantial circumstantial evidence that he was transferring, transporting, or concealing known proceeds from drug sales. *Cf. United States v. Santos*, 553 U.S. 507, 521 (2008).

### F. Discharging a Firearm at a Nonresidential Structure

¶45 Rodriguez also challenges his conviction of "knowingly discharg[ing] a firearm at a nonresidential structure" under A.R.S. § 13-1211(B). This court recently concluded "that a conviction for discharging a firearm at a nonresidential structure requires evidence that a defendant 'knowingly' shot 'at' a nonresidential structure, as opposed to firing at a person and inadvertently striking a structure." *State v. Aguirre*, 255 Ariz. 89, 91 ¶ 1 (App. 2023).

¶46 The State concedes Rodriguez's conviction under § 13-1211(B) is incompatible with *Aguirre* and should be vacated. We accept that concession. Because there was no evidence Rodriguez knowingly shot at the truck, we vacate his conviction for violating § 13-1211(B).

**CONCLUSION**

**¶47**     Because insufficient evidence supports Rodriguez's conviction for discharge of a firearm at a nonresidential structure, we vacate that conviction and sentence and remand for further proceedings consistent with this decision.  We otherwise affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AGFV

14