NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ALEXANDER ERMENES BACA, *Appellant.*

No. 1 CA-CR 24-0067

FILED 01-30-2025

Appeal from the Superior Court in Coconino County
No. S0300CR202100463
The Honorable Stacy Lynn Krueger, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Madeline Shupe
*Counsel for Appellee*

Coconino County Legal Defender, Flagstaff
By Joseph A. Carver
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Anni Hill Foster delivered the decision of the Court, in which Judge Michael J. Brown and Judge Paul J. McMurdie joined.

---

**F O S T E R**, Judge:

¶1        Defendant Alexander Baca appeals his convictions and sentences for first-degree murder and aggravated harassment. He claims the court erred by failing to dismiss a seated juror, Juror 14, for cause. For the following reasons, this Court affirms.

### FACTS AND PROCEDURAL HISTORY

¶2        The State charged Baca with first-degree murder and aggravated harassment against his former girlfriend. The case proceeded to a jury trial.

¶3        While returning from the lunch break on the eighth day of trial, as Juror 14 was parallel parking, the passenger in the truck ahead of Juror 14 jumped out and claimed Juror 14 hit the truck. Neither Juror 14 nor a fellow juror who was with him believed they hit the truck, and they relayed that belief to the truck's passenger. As they discussed the matter, the truck's driver approached, and all four people examined the bumper and found no damage. The passenger remained convinced Juror 14 hit the truck, so Juror 14 said, "I'm sorry if I did." After that, the jurors and the truck's occupants went their separate ways. The jurors noted that the truck had a sticker on it that read "Baca Soul" or "Baca Strong," and Juror 14 later identified the truck's occupant as someone who attended the trial and sat on the defense's side.

¶4        Juror 14 reported the incident to the bailiff, who informed the trial judge. At the request of Baca's counsel, the court questioned Juror 14 and the other juror to determine if the interaction would impact their deliberations. The judge asked Juror 14 if he "ha[d] any concerns about this interaction in terms of [his] jury service," to which Juror 14 replied, "Not at all." The judge followed up by asking, "And anything about that that causes you any concern with your ability to be fair and impartial in this matter?" Juror 14 responded, "Not really." Baca's counsel asked about the tone of the conversation, and Juror 14 recounted the story. When Baca's counsel

2

rephrased the question, emphasizing whether "anyone was upset or angry or anything like that," Juror 14 answered: "No. I mean, I wish—I mean, I don't know what to say. I don't know. Just coming back from lunch." Counsel again asked the question: "I'm just trying to get a sense of what the conversation was like between the two of you. And if you got the sense that this other person was upset or if you or [the other juror] was upset at all." Juror 14 responded: "Not upset. Just something that happened, you know."

¶5        The juror who accompanied Juror 14 similarly reported the interaction. Although this juror described the truck's passenger as "acting tough" and "upset," he clarified that the passenger was not "yelling" or being "animated." The judge asked this juror: "[A]nything about that interaction at all, would it affect your ability to be fair and impartial in this case?" This juror responded: "No. I don't think it has any bearing on what's going on in here."

¶6        Baca's counsel moved to dismiss Juror 14[1], claiming "his body language appeared to be defensive" and a concern about "inherent prejudice against Mr. Baca." The court denied the motion, concluding there was no indication the incident would affect Juror 14's ability to remain fair and impartial. Later that day, after the trial progressed, Baca's counsel re-urged the motion to strike Juror 14 after observing Juror 14 "staring at Mr. Baca's family for extended periods of time." The court again denied the motion, determining a juror "looking in the direction of . . . defense counsel table, defendant, and also anyone behind [the defendant] is not enough" to change the court's perception of whether the juror could remain fair and impartial.

¶7        The trial continued, and the jury convicted Baca on both counts. Baca moved for a new trial on several grounds, including the court's failure to strike Juror 14, but the court denied the motion. Baca was sentenced to imprisonment for natural life for the first-degree murder conviction and to one year for the aggravated harassment conviction, with 966 days of presentence incarceration credit.

¶8        Baca timely appealed. This Court has jurisdiction under Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031 and -4033(A).

---

[1] Baca's counsel also moved to dismiss the other juror, but that ruling was not challenged on appeal. *See State v. Larson*, 222 Ariz. 341, 346, ¶ 23 (App. 2009) (argument not advanced in opening brief is waived).

## DISCUSSION

**¶9**        Baca's single issue on appeal is whether the court erred by failing to excuse Juror 14. This Court reviews the superior court's refusal to strike a juror for an abuse of discretion, *State v. Montoya*, ___ Ariz. ___, ___, ¶ 72, 554 P.3d 473, 500 (2024), which requires this Court to "determine whether substantial evidence supports" the court's decision, *State v. Miller*, 234 Ariz. 31, 44, ¶ 51 (2013) (quotation omitted). And, because Baca's counsel objected to the court retaining Juror 14, this Court "review[s] any error for harmless error." *Montoya*, ___ Ariz. at ___, ¶ 72, 554 P.3d at 500. Under harmless error review, "the [S]tate must prove beyond a reasonable doubt that the error did not contribute to or affect the verdict." *State v. Perez-Gutierrez*, 257 Ariz. 307, 312, ¶ 18 (2024) (cleaned up).

**¶10**        "The right to a jury trial requires unbiased, impartial jurors." *State v. Eddington*, 228 Ariz. 361, 363, ¶ 6 (2011) (citations omitted). "Even a single partial juror violates a defendant's constitutional right to a fair trial." *State v. Macias*, 249 Ariz. 335, 339, ¶ 10 (App. 2020) (quotation omitted). "Persons biased or prejudiced" for "or against" any party in an action "shall be disqualified to serve as jurors." A.R.S. § 21-211(4); *accord* Ariz. R. Crim. P. 18.4(b) ("The court . . . *must* excuse a prospective juror . . . from service in the case if there is a reasonable ground to believe that the juror . . . cannot render a fair and impartial verdict." (emphasis added)). But because the trial court is in the best position to determine an impaneled juror's fairness and impartiality, *State v. Reinhold*, 123 Ariz. 50, 55 (1979), a defendant "challenging the juror bears the burden of establishing" the juror's bias or discrimination, *State v. Hoskins*, 199 Ariz. 127, 139, ¶ 37 (2000).

**¶11**        Baca contends "the totality of the circumstances showed a risk that the jury's edifice of impartiality had been compromised." He re-urges the arguments that Juror 14 appeared "defensive" against Baca's counsel when answering questions, "stared at [Baca's] family for a noticeably long time" during the trial and that the parking interaction did not involve merely a minor fender-bender but a "confrontation." Essentially, Baca requests this Court to reweigh the evidence of Juror 14's fairness and impartiality, which this Court will not do. *See State v. Acuna Valenzuela*, 245 Ariz. 197, 210, ¶ 30 (2018) ("Although the juror here did not respond in the same affirmative manner as the juror in [an earlier case], [this Court] defer[s] to the decision of the trial court who actually heard the testimony and observed the juror's demeanor.").

**¶12**        Baca also cites several cases stressing that courts must dismiss a juror whenever "reasonable grounds" exist to believe the juror cannot be

fair or impartial. Ariz. R. Crim. P. 18.4(b). Yet the facts of the cases he cites supporting reasonable grounds are much different than those in this case. *See Eddington*, 228 Ariz. at 365, ¶ 18 (juror working for the investigating agency); *State v. Cota*, 229 Ariz. 136, 146–47, ¶¶ 39–40 (2012) (juror who became "upset" at a comment made by the prosecutor, reported she felt "humiliated" and "wasn't sure she could ever side with the State thereafter" and "missed several minutes of testimony because she was upset"). Other cases discussing reasonable grounds for dismissing jurors are similarly distinguishable. *State v. Johnson*, 247 Ariz. 166, 198, ¶ 113 (2019) (juror whose "opinion is unqualified or fixed" (cleaned up)); *State v. Thornton*, 187 Ariz. 325, 330 (1996) (jurors possessing "personal knowledge of a material, disputed aspect of the case" or "knowledge that is unique to the case"). The record before this Court does not establish "reasonable grounds" that would require Juror 14's dismissal.

¶13            Substantial evidence supported the court's determination that "there[ wa]s no indication that . . . [Juror 14's] ability to be fair and impartial w[as ] affected by th[e] interaction." When questioned about whether the incident would impact his ability to remain fair and impartial, Juror 14 repeatedly answered it would not. The court found Juror 14 "was very clear and precise with his answers, that it would not affect him, would not affect his ability to be fair and impartial." The court perceived Juror 14 to be "almost confused by why the [c]ourt was asking whether he could still be fair and impartial." After hearing Juror 14's and the other juror's accounts, the court summarized the incident: "[M]inor fender-benders, it happens. Interaction did not seem to be much of an interaction at all. It was short. It was a couple comments, they looked for damage, there was no damage, and then the other individuals walked away." The court concluded by saying: "I don't see any concerns with this—with this juror remaining. And there's no indication that—to indicate that his ability to be fair and impartial would be affected by this interaction." The court did not abuse its discretion by keeping Juror 14 impaneled. *See Johnson*, 247 Ariz. at 199, ¶ 126 ("The court found [the impaneled juror's] answers appropriate, candid, and credible, leaving the court confident that [the juror] could serve. The law requires nothing more.").

**CONCLUSION**

¶14     For the reasons above, Baca's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:        JR